**Roman GOSSERAND, Respondent,**

v.

**Tiffani GOSSERAND, Appellant.**

**No. WD 67146.**

Missouri Court of Appeals,
Western District.

Aug. 7, 2007.

William Harrison Reynolds, Kansas City, MO, for appellant.

Brian L. Burge, Overland Park, KS, for respondent.

Before JAMES M. SMART, JR., P.J., JOSEPH M. ELLIS, and LISA WHITE HARDWICK, JJ.

JAMES M. SMART, JR., Judge.

Tiffani Gosserand ("Mother") appeals the judgment of the circuit court modifying parenting time and child support regarding her two minor children with Roman Gosserand ("Father"). Mother claims the trial court lacked subject matter jurisdiction to hear the matter. The judgment is reversed and the case is remanded to the trial court.

## Background

The parties lived together with children as husband and wife in North Carolina until they separated. Father moved to Missouri after the separation. Father petitioned for divorce in Missouri. The dissolution was granted in Jackson County, Missouri, on October 27, 2002. The decree granted to Mother and Father joint legal and physical custody of the two minor children. At the time of the divorce, Mother and the children remained in North Carolina. Father was granted visitation with the children in both North Carolina and Missouri. Father was ordered to pay the sum of $776 per month in child support beginning April 1, 2002.

Father filed a motion to modify custody on October 11, 2005. Mother was personally served on November 2, 2005, but she did not file an answer to the motion. At an April 19, 2006, hearing, Mother did not appear in person or through counsel. The only person presenting testimony was Father.

Based on Father's testimony, the court found that circumstances had changed with regard to the children in that Mother had denied Father parenting time with the children, Mother had relocated at least three times without notifying Father, the children had changed schools many times,

and Mother had withheld information about the children from Father, all despite Father's efforts to contact Mother and the children. The court found that it had jurisdiction over the parties and the subject matter. The court modified the custody arrangement, granting Father the right to have the children reside primarily with him and granting Mother visitation rights. The court revoked Father's obligation to pay child support to Mother and ordered Mother to pay $506 per month to Father in child support.[1]

Then on May 26, 2006, Mother filed a motion to vacate the judgment based on a lack of subject matter jurisdiction or, in the alternative, to set aside the default judgment. On June 26, 2006, the court denied Mother's motion. Mother now appeals to this court.

## Standard of Review

■ Although Mother made a motion to vacate or set aside the judgment after it was entered, her point states that the trial court erred in entering its judgment modifying parenting time and child support because it lacked subject matter jurisdiction. Mother does not appeal the denial of her motion to set aside the default judgment; instead, she appeals the judgment itself on grounds that the trial court lacked subject matter jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA). While ordinarily we do not review a default judgment, but instead review the denial or grant of the motion to set aside, one of the exceptions to this principle occurs when the challenge of the appellant is as to subject matter jurisdiction. *In re Marriage of Miller & Sumpter*, 196 S.W.3d 683, 689 (Mo.App.2006). Therefore, we

---

1. Because Father was in arrears for the child support he owed to Mother, the court ordered that Mother was not obligated to pay child support until January 2008, at which time Mother's obligation to pay Father would essentially equal the amount Father was in arrears.

will review the judgment of modification in this case to determine the issue of subject matter jurisdiction.

 As in any other court-tried case, we will uphold the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Because the question here is one of jurisdiction, it is an issue of law, and our review is *de novo. Miller,* 196 S.W.3d at 689.

 Questions of jurisdiction may be raised at any point. *Davis v. Davis,* 799 S.W.2d 127, 130 (Mo.App.1990). A trial court's subject matter jurisdiction under the UCCJA must be based upon circumstances existing at the time the court's jurisdiction is invoked. *Miller,* 196 S.W.3d at 689. Subject matter jurisdiction cannot be waived or conferred by consent of the parties. *Id.* The proponent of jurisdiction, in this case Father, has the burden of establishing a *prima facie* basis for that jurisdiction. *Id.* In addition, although neither party mentioned it to this court, it is important to note that when subject matter jurisdiction is predicated upon the UCCJA for a child custody matter, a trial court that does not have jurisdiction over child custody also does not have jurisdiction to adjudicate child support. *Id.* at 694.

## Analysis

Missouri has adopted the Uniform Child Custody Jurisdiction Act (UCCJA). Section 452.440 RSMo, et seq.[2] Section 452.450 sets forth the circumstances which give the court subject matter jurisdiction over a child custody dispute:

1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) This state:

(a) Is the home state of the child at the time of commencement of the proceeding; or

(b) Had been the child's home state within six months before commencement of the proceeding and the child is absent from this state for any reason, and a parent or person acting as parent continues to live in this state; or

(2) It is in the best interest of the child that a court of this state assume jurisdiction because:

(a) The child and his parents, or the child and at least one litigant, have a significant connection with this state; and

(b) There is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

(3) The child is physically present in this state and:

(a) The child has been abandoned; or

(b) It is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse, or is otherwise being neglected; or

(4) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivision (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction.

2. Except as provided in subdivisions (3) and (4) of subsection 1 of this section, physical presence of the child, or of the

---

2. All statutory references are to the Revised Statutes of Missouri, 2000.

child and one of the litigants, in this state is not sufficient alone to confer jurisdiction on a court of this state to make a child custody determination.

3. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.

## The "Home State"

The UCCJA seems, by its structure, to express the notion that generally the most appropriate state to assume jurisdiction over a custody issue is the "home state" of the child at the time the proceedings are commenced. Section 452.450.1(1)(a). The "home state" in this context is the state in which, immediately preceding the filing of a custody proceeding, the child lived with a parent. Section 452.445(4). Because, here, the home state is North Carolina, Father's argument that the circuit court had subject matter jurisdiction is based solely on section 452.450.1(2). That subsection allows a court of a state other than the "home state" to assume jurisdiction when it is in the best interest of the child for the court to do so, because there is a significant connection with the state, and there is available in the state substantial evidence concerning the child's present or future care, protection, training, and personal relationships. Section 452.450.1(2).

The trial court found that it had subject matter jurisdiction, yet it provided no analysis of the issue. The court did not indicate its belief about the statutory subsection by which jurisdiction was conferred.

Section 452.450.1(2) provides that,

A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

. . .

(2) It is in the best interest of the child that a court of this state assume jurisdiction because:

(a) The child and his parents, or the child and at least one litigant, have a significant connection with this state; and

(b) There is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships[.]

Mother did not enter a special appearance to contest jurisdiction. Mother first raised the issue of jurisdiction before the lower court when she filed her motion to vacate or set aside the judgment.

## Descending Preferential Order

The comments to the UCCJA make it clear that the bases for jurisdiction set out in paragraphs (1) through (4) of section 452.450.1 are in descending preferential order. *Miller,* 196 S.W.3d at 690. The jurisdictional bases asserted here, under section 452.450.1(2), may be utilized in place of home state jurisdiction, conferred under section 452.450.1(1), only if the child and his family have equal or stronger ties with this state. *Id.* at 691. The comments to the UCCJA, which this court has frequently relied upon, state that

[p]aragraph (2) perhaps more than any other provision of the Act requires that it be interpreted in the spirit of the legislative purposes expressed in section 1. The paragraph was phrased in general terms in order to be flexible enough to cover many fact situations too diverse to lend themselves to exact description. But its purpose is to limit jurisdiction rather than to proliferate it. The first clause of the paragraph is important: jurisdiction exists only if it is in the *child's* interest not merely the interest or convenience of the feuding parties, to determine custody in a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family.

There must be maximum rather than minimum contact with the state. *Miller*, 196 S.W.3d at 692 (*quoting* UCCJA sec. 3 comment, 9 U.L.A. 309 (1999)). *See also In re Marriage of Dooley*, 15 S.W.3d 747, 757 (Mo.App.2000) (stating the same principles).

The requirements of the UCCJA intend to vest jurisdiction in the state with the greatest access to relevant information about the child and family. *State ex rel. Dept. of Soc. Servs. v. Hudson*, 158 S.W.3d 319, 324 (Mo.App.2005). The purpose behind this intent is to increase the likelihood that the custody decision will be in the child's best interests. *Id.* As a general rule, the state with access to the most relevant information is the child's home state. *Id.* We only resort to section 452.450.1(2), then, in unusual circumstances. *Id.* It may only be used if the child and his family have equal or stronger ties with another state. *Miller*, 196 S.W.3d at 691.

Mother relies heavily on *Payne v. Weker*, 917 S.W.2d 201 (Mo.App.1996). There, the parties' original divorce proceeding had taken place in Missouri. *Id.* at 202. Afterwards, the mother and child had moved to Maryland. *Id.* The father then filed a motion to modify custody, and the trial court dismissed the motion, finding that it was in the best interests of the child that Maryland assume jurisdiction. *Id.* at 203. The father appealed and this court upheld the trial court's dismissal, finding that the child's greater contacts were with Maryland in that she attended school there, had established friendships, was involved in activities, and her medical records were located in Maryland. *Id.* at 204–05. As pointed out by Father, *Payne* differs somewhat from this case in that Mother in this case did not appear in the trial court, whereas in *Payne* the mother appeared and presented evidence on the jurisdictional issue. Absent evidence before the trial court that, for example, the children have established friendships in North Carolina, we do not presume any such facts.

Father, on the other hand, relies on *Dobbs v. Dobbs*, 838 S.W.2d 502 (Mo.App. 1992), and *Lydic v. Manker*, 789 S.W.2d 129 (Mo.App.1990). Both cases are distinguishable. In *Dobbs*, the parties' original dissolution and custody decree was entered in Missouri. 838 S.W.2d at 503. Afterwards, the mother moved with the children to Tennessee. *Id.* At some point in time, the father received a phone call from the children saying that the mother had left them at a fast food restaurant in Indiana and they were uncertain when she was going to return. *Id.* The father went to Indiana to pick up the children and eventually returned them to the mother. *Id.* Thereafter, the mother pulled another disappearing act when she left the children with a friend in Tennessee while she went to Texas. *Id.* The friend called the father and asked him to come pick up the children, which he did. *Id.* While the children were with the father in Missouri, he filed a motion requesting a temporary restraining order and a modification of the dissolution decree. *Id.* The restraining order was to prevent the mother from removing the children from the state and hiding them while he sought primary custody. *Id.* Due to these exigent circumstances, and the fact that the original dissolution decree had been entered in Missouri, the court assumed jurisdiction in order to protect the interests of the children. *Id.* at 503–04.

In *Lydic*, the parties' marriage was originally dissolved in Missouri and custody of the children was awarded to the mother. 789 S.W.2d at 130. The mother then moved with the children to Washington without permission of the father or the

court, in violation of the dissolution decree. *Id.* Thereafter, the father filed a motion to modify custody. *Id.* Although the mother had changed the children's home state, the court found that it retained jurisdiction in Missouri, in part because the change was made in violation of the original custody decree. *Id.* at 131–32. To have ruled otherwise would have encouraged parents to manipulate the designation of "home state" in violation of court orders.

### North Carolina was the "Home State"

In the current case, although Mother allegedly had moved the children around the state of North Carolina, the circumstances do not have the degree of exigency that they did in *Dobbs;* neither was there a removal by Mother from Missouri in order to manipulate jurisdiction. Although the court here was free to believe Father's testimony that Mother moved the children within North Carolina without informing Father of their whereabouts, and could believe that she had denied Father his parenting time with the children, such facts could not change the status of North Carolina as the children's home state (where much of the pertinent information related to the children's welfare could be found). Missouri was not the home state. Mother and the children were always legitimately in North Carolina, and North Carolina was always undisputedly the children's home state.

Father's testimony sheds only some light on the children's current living situation and gives neither this court nor the trial court much insight into the children's best interests. His testimony alone has not overcome the presumption in favor of the children's home state as the state that should have jurisdiction over the subject matter under the UCCJA. *See Miller,* 196 S.W.3d at 692. The mere fact that Father and Father's family reside in Missouri and there are plans for the children's future care here does not by itself provide sufficient evidence of significant contacts with Missouri to overcome the presumption in favor of home state jurisdiction. *See Hudson,* 158 S.W.3d at 324–25. Father had additional witnesses to present at the earlier hearing that he did not have the opportunity to call because the trial court considered his testimony sufficient. He should be permitted on remand to call these witnesses if they have pertinent information.

### Lack of Factual Findings Supporting Jurisdiction

The trial court found that it had subject matter jurisdiction without making findings of fact supporting that determination. "It has been observed that it is implicit in the scheme of the UCCJA that the trial court should make an initial determination of jurisdiction by express findings of fact before proceeding to the substantive issue of custody." *Bounds v. O'Brien,* 134 S.W.3d 666, 670 (Mo.App. 2004). A judgment that contains a conclusory statement of jurisdiction is insufficient. *Krasinski v. Rose,* 175 S.W.3d 202, 204 (Mo.App.2005). Thus, we reverse the judgment and remand the case to the trial court to conduct a hearing at which it can hear all pertinent evidence and make a determination of jurisdiction by express findings of fact.

ELLIS and HARDWICK, JJ., concur.